GEORGE S. COE et al., appellants,

*v.*

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY et al., respondents.

1. A railroad company having filed a survey of a route over which another company also had filed a survey, having held such other company out as the builder of the track over such route, and having taken the benefit of a contract incident to the laying of such route, made in the name of such other

Coe v. Del., Lack. and West. R. R. Co.

company, cannot repudiate such contract, on the ground that itself is the builder of such road.

2. When a mortgage is given by a railroad company on its franchises and on its roads to be thereafter built, and a branch road, not in contemplation at the date of such encumbrance, is afterwards laid and built, such branch road will pass under such mortgage subject to the burthens put upon it by the company in the course and as incidents of its acquisition.

———

On appeal from a decree of the chancellor, whose opinion is reported in *Coe* v. *N. J. Midland R. R. Co.*, *4 Stew. Eq. 105.*

*Mr. Cortlandt Parker*, for appellants, cited—

*M. & E. R. R. Co.* v. *Central R. R. Co.*, *2 Vr. 209 ; Moorehead* v. *Little Miami, 17 Ohio 340 ; Blakeman* v. *Canal Co., 1 Md. 154.*

Corporations can be bound by implied contracts to be deduced by inference from corporate acts, without either a vote, or deed, or writing. *Bank of Columbia* v. *Patterson, 7 Cranch 299 ; Bank of the United States* v. *Dumbridge, 12 Wheat. 74 ; Perkins* v. *Washington Ins. Co., 4 Cow. 645 ; American Ins. Co.* v. *Oakley, 9 Paige 496 ; Fanning* v. *Gregoire, 16 How. 524 ; Abbott* v. *Hermon, 7 Greenl. 118 ; Frankfort Bridge Co.* v. *City of Frankfort, 18 B. Mon. 41 ; Peterson* v. *Mayor &c., 17 N. Y. 449– 453 ; Fister* v. *La Rue, 15 Barb. 323 ; Congregation Beth Elohim* v. *Central Presbyterian Church, 10 Abb. (N. S.) 484 ; Ang. & Ames on Corp. 216, 218 ch. VIII. § 8, and cases cited ; U. S.* v. *N. O. R. R. Co., 12 Wall. 364 ; Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq 317, 319, 320, 321 ; Fenner* v. *Lewis, 19 Johns. 38 ; Meade* v. *McDowell, 5 Binn. 195 ; Bigelow on Estoppel 578–588 ; Phillipsburgh Bank* v. *Fulmer, 2 Vr. 52 ; Den* v. *Baldwin, 1 Zab. 395, 403 ; Philhower* v. *Todd, 3 Stock. 312 ; Morris Canal* v. *Lewis, 1 Beas. 323 ; Pickert* v. *Ridgefield R. R. Co., 10 C. E. Gr. 316 ; Carpender* v. *Carpender, Id. 184.*

*Mr. John W. Taylor*, for respondents.

I. The appellants were not entitled to a specific performance

of the agreement of October 16th, 1872, against the complainants.

II. The decree rightfully requires the appellants to pay the value of the land taken for the crossings, and the damages sustained in consequence thereof. *Coe* v. *N. J. Midland R. R. Co., 1 Stew. Eq. 27; Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq. 211; Cortes* v. *City of Davenport, 9 Iowa 227; Beyer* v. *Tanner, 29 Ill. 135; Hatfield* v. *Cent. R. R. Co., 4 Vr. 251; Jersey City* v. *Montclair R. R. Co., 6 Vr. 328; M. & E. R. R. Co.* v. *Blair, 1 Stock. 635.*

III. If the respondents are entitled to damages &c., they are entitled to a reference to ascertain them.

IV. The mortgage of the respondents included the railway over which the right of crossing is claimed by the appellants. *Jones on R. R. Securities § 130; 1 Jones on Mortgages (2d ed.) §§ 155, 157; 2 Redfield on Railways (5th ed.) 503; Green's Brice's Ultra Vires (2d ed.) 235, and note A; Seymour* v. *Canandaigua &c. R. R. Co., 25 Barb. 284; Meyer* v. *Johnston, 53 Ala. 227, 330; Willink* v. *Morris Canal Co., 3 Gr. Ch. 377; Williamson* v. *N. J. Southern R. R. Co., 10 C. E. Gr. 13; S. C., 2 Stew. Eq. 311; Holroyd* v. *Marshall, 10 H. L. Cas. 191; Pennock* v. *Coe, 23 How. 117; Dunham* v. *R. R. Co., 1 Wall. 254; Galveston R. R. Co.* v. *Cowdrey, 11 Wall. 459; Pierce* v. *Emery, 32 N. H. 484; Mitchell* v. *Winslow, 2 Story 630; Phillips* v. *Winslow, 18 B. Mon. 431; Elwell* v. *Grand St. and Newtown R. R. Co., 67 Barb. 83; Pierce* v. *Emery, 32 N. H. 484; Shamokin Valley R. R. Co.* v. *Livermore, 47 Pa. St. 465; Stevens* v. *Watson, 4 Abb. Ct. of App. Dec. 302; Evansville and Crawfordsville R. R. Co.* v. *Dick, 9 Ind. 433.*

V. With respect to the remaining ground of apppeal, viz., " that the said decree declares and decrees that the Hudson Connecting Railway Company had no title to or right in the right of way covered by said crossing," it is sufficient to remark :

1. That the appellants are not the Hudson Connecting Railway Company, and cannot allege themselves to be "aggrieved"

by this part of the decree, nor can they appeal therefrom. They can appeal only from such parts of the decree as affect *them*, and cannot. call in question other parts of the decree in which they have no interest. *2 Daniell's Ch. Pr. (4th ed.) p. 1489, and note 2 ; Idley v. Bowen, 11 Wend. 227 ; Hone v. Van Schaick, 7 Paige 222.*

*Mr. D. H. Chamberlain, of Maine,* for respondents.

From this decree the present appellants appeal, for the following reasons :

1. Because the decree holds that the appellants are not, as against the trustees of the first mortgage, entitled to the specific performance of the agreement between the appellants and the Hudson Connecting Railway Company, set up in appellants' cross-bill.

2. Because the decree holds that the appellants should be required to pay to the said trustees, as mortgagees, the value of the land taken by the appellants and for the crossings made by them of the tracks and right of way of the New Jersey Midland Railway Company, and all damages sustained by the latter company and its mortgagees by reason of said crossings.

3. Because the decree refers it to a master to ascertain and report the amount of the value and damages, and reserves the subject for a separate supplemental decree.

4. Because the decree holds that the Hudson Connecting Railway Company had no title or right in the right of way covered by said crossings, and the mortgage to the trustees included the railway of the Hudson Connecting Railway Company over said crossings, and that the appellants' right in said crossings is to be considered as subject to the said mortgage to the trustees.

5. Because the decree orders a writ of *fieri facias* for the sale of the appellants' interest in said crossings; and orders the appellants to surrender possession to the purchaser at such sale.

I. As to the appellants' right to specific performance. *Fry on Spec. Perf. §§ 79, 103 ; Vandyne v. Vreeland, 3 Stock.*

*379 ;* Fry on Spec. Perf. § *251 ;* Clarke v. Rochester, L. and
N. R. R. Co., 18 Barb. *350 ;* Story's Eq. Jur. § *750 ;* Fry
on Spec. Perf. § *252 ;* Vandyne v. Vreeland, *3* Stock. *370,
381 ;* Johnson v. Hubbell, *2* Stock. *332, 342 ;* McDavitt v.
Pierrepont, 8 C. E. Gr. *42 ;* Dickerson v. Colgrove, *100* U. S.
*578, 580 ;* Erie R. R. Co. v. Del., Lack. and West. R. R. Co.,
*6* C. E. Gr. *283.*

II. As to that part of the chancellor's decree which requires
the appellants to pay to the trustees the value of the land taken,
and for the crossings made, and for all damages sustained by the
Midland company and its mortgagees by reason of such cross-
ings.

III. As to the title of the Hudson Connecting Railway
Company to the right of way covered by the crossings in
question, and as to the subordination of the rights of the appel-
lants in the said crossings to the trustees' mortgage.

IV. If the several positions already maintained in this argu-
ment shall be regarded as correct, it will remain to inquire what
is the attitude of the appellants toward the trustees, as mort-
gagees, upon the foreclosure of their mortgage. *Sedgwick on
Meas. of Dam.* (7th ed.) [*134*] note (a); Berry v. Vreeland, 1
Zab. *183 ;* Van Schoick v. Del. & Rar. Can. Co., Spen. *249 ;*
Readington v. Dilley, *4* Zab. *210 ;* Som. & E. R. R. Co. v.
Doughty, *2* Zab. *495 ;* Trenton Water Power Co. v. Chambers, *2*
Beas. *199.*

V. In respect to the remaining grounds of appeal from the
chancellor's decree. Chegary v. Scofield, *1* Hal. Ch. *525 ;* Ryer-
son v. Boorman, *3* Hal. Ch. *640 ;* Schenck v. Conover, *3* Beas. *32.*

The opinion of the court was delivered by

BEASLEY, C. J.

In consequence of the voluntary withdrawal of several of the
parties to this appeal, but two questions are left for solution by
this court, and those questions are, Whether a certain written

Coe v. Del., Lack. and West. R. R. Co.

agreement, made between the Hudson Connecting Company and the Morris and Essex Railroad Company and the Delaware, Lackawanna and Western Railroad Company, has a legal existence, and, if so, what is its legitimate interpretation, bearing date 16th of October, 1872. The substance of this agreement is, that the Morris and Essex Railroad Company should permit the Hudson Connecting Company to construct its railway over that of the Morris and Essex, and, as an equivalent, that the latter company should have the right to cross the track of the former.

This contract is drawn into controversy in this wise: George S. Coe, as trustee of certain bondholders of the New Jersey Midland Railway Company, is the original complainant in these proceedings, having filed his bill to foreclose a mortgage given to him by that company as a security of the bonds just mentioned. To that suit the Delaware, Lackawanna and Western Railroad Company, as the lessee of the Morris and Essex, were joined as a party. This latter company, during the pendency of these proceedings, attempted to construct its line of road by force of the agreement just referred to, over the line of the road which it insists is the property of the Hudson Connecting Company, and such effort having been resisted, it filed its bill for a specific performance of the stipulation in question. To the claim thus set up, the complainant Coe, as trustee, denies the ownership of the Hudson Connecting Company to the line of railroad embraced in the agreement, and avers that this portion of the railroad track was laid out, constructed and paid for by the New Jersey Midland, and consequently that it passed under the trust mortgage. The circumstances relating to the controversy with respect to the title to this portion of railroad track are multiform and numerous, and they will be found detailed with fullness and accuracy in the opinion read in that case by the chancellor. From the view which I shall express touching the questions involved, it will not be necessary for me to recapitulate such facts with minuteness. The following outline will suffice to render the grounds of the conclusions arrived at by me, perspicuous:

The trust mortgage held by the complainant is dated 1st of August, 1870, and at that time, and up to the spring of 1871,

the New Jersey Midland Railway Company designed to reach
the Hudson river by a direct route, but on account of the expense,
found such purpose impracticable, and therefore formed the plan
of attaining the desired terminus by means of a connection with
the Pennsylvania Railroad Company.  In furtherance of this
design, on the 12th of July, 1871, it filed a location of what it
called its branch line, in its survey,' from a point near Bellman's
creek, to the Pennsylvania railroad, at West End.  This route
was identical with a survey laid by the Hudson Connecting
Company, part of which had been laid before and part after that
of the Midland.  But this interference between these surveys
was practically of no moment, as both these companies were
under the same management.  Under these circumstances, the
Midland began to acquire the land necessary for this route, but
in a proceeding to condemn lands, having been defeated on the
ground of a want of power to lay the route in question, the
agents in charge of the affair determined to lay such route in the
name of the Hudson Connecting Company.  Accordingly this
was done, the New Jersey Midland taking the title to such pieces
of land as were obtained by agreement with the owners, in its
own name, the residue of the land being condemned by proceed-
ings in the name and under the charter of the Hudson Connect-
ing Company.  In order to help pay the cost of the construction
of this line of road, bonds have been issued by the connecting
company to the amount of $400,000, which were secured by a
mortgage on its road and franchises.  Part of these bonds were
given to the Midland, and part to the Montclair railroad, a
tributary of the former, and which, in this matter, was acting
in concert with the former company.  The line thus built was
paid for in part by the Midland.  The road having been built
in this way, and the facts having been laid before the board of
directors of the Midland, that body passed a resolution directing
the title to the lands embraced in the route to be conveyed to the
Hudson Connecting Company.  That step was accordingly taken,
the conveyance bearing date the 16th of October, 1873, and
shortly afterwards the Midland took a lease of the road.  These
facts do not seem to me to be disputable.  But the contention of

the complainant is, that the proceedings of the agents of the Midland in acquiring this route by force of the charter of the Hudson Connecting Company, and for the uses of such company, was beyond the province of their agency, and that such a course of proceeding was, at the time, neither known to nor sanctioned by the body of directors of the Midland, and that when such board did subsequently sanction these steps, such ratification was void, as respects the complainant being a prior mortgagee. With respect to the condemnation of lands made by force of the charter of the Hudson Connecting Company, the position is, that in that matter the charter of that company was used merely as a means to an end—that is, to the acquisition of such lands by the Midland. Such a view appears to involve the proposition that if an agent, in good faith and in the belief that it is best for the interests of his principal, departs from his instructions and does an act not authorized, and the principal becoming aware of such act, in good faith ratifies it, such ratified act is not binding; and also the further proposition that a corporate body, possessed of right of eminent domain, can lawfully transfer such right, in its own discretion, *pro tanto*, to another corporate body. These propositions seem to underlie the position of the complainant with regard to the general aspects of this case. But as I think the matter now before the court can be settled without discussing or considering this position, I shall not express any opinion respecting it; nor shall I undertake to decide the further question whether this branch road is embraced in the description of the provisions contained in the complainant's mortgage—a question so ably discussed in the brief of the counsel of the appellants, for a solution of these questions is not necessary to the theory of decision which appears to me at present to be applicable.

That theory is that this respondent, the trustee, is not in a position to call this contract in question. If we assume the attitude of the respondent with respect to the ownership of this line of road here in dispute, and hold that such ownership resides in the Midland Railway Company, it is impossible to deny that in the acquisition of such roadway the Hudson Connecting Company was used as an agent by the managers of the first-

18

named corporation. The title to lands has been extorted from unwilling land-owners in the name of the Hudson Connecting Company, for the benefit of the Midland. In his answer, the trustee is obliged to admit that a right to cross the Erie railway was acquired for the benefit of the Midland by the Hudson Connecting Railway Company. In addition to these acts, in April, 1872, the route of the road-bed in dispute leading across the road of the Morris and Essex, the agents of the Midland took proceedings to obtain a right to such crossing by condemnation in the name of the connecting company, such measure being, as it is now claimed, for the use of the Midland, and thereupon an agreement in writing was entered into between the Morris and Essex Railroad Company and the Hudson Connecting Company, whereby a crossing was acquired, which, up to the present time, has been in the full possession and use of the Midland. The contract thus made, as it is claimed, for the benefit of the Midland, was never dissolved by that company, even at the time of the filing of this bill. It was under these circumstances that in the fall of the same year the contract now in dispute was entered into. It will be remembered that this latter contract was likewise in the name of the connecting company, and by it a right was given to that company to lay its crossing for the use of the Montclair road over the Morris and Essex. The evidence shows that in laying this disputed piece of road the Midland and the Montclair railroads were acting in concert, each having received a portion of the bonds issued by the Hudson Connecting Company. In the light of the evidence it is impossible to deny that the New Jersey Midland Railroad Company was a party or privy to both these agreements, and both of them, in the most impressive manner, held out to the Morris and Essex that the line of road in question was being built by the Hudson Connecting Company. Under such conditions it does not seem to me of the least importance, so far as the present controversy is concerned, which corporation, in point of fact, was the real builder of this part of road, if it was the Hudson Connecting Company. Thus, plainly, the contract now under consideration is clearly valid, and so it seems to me it is plainly valid as against

Coe *v.* Del., Lack. and West. R. R. Co.

the respondent, even on the opposite assumption as to ownership, inasmuch as in all these transactions the Hudson Connecting Company was held out by the Midland as the builder and owner of the road. The chancellor, in his opinion, says that

"The connecting company merely lent its charter powers of condemnation to the latter [the Midland] to be used if and when necessary to effectuate the purpose of the latter, in the execution of which it then was, and for a considerable length of time had been engaged—the construction of its railroad from Bellman's creek to West End. That was the end and aim of the project of using the connecting company's charter, and the sum and substance of the whole matter."

It will be observed that no one act in the progress of the transaction thus described could be done without presenting, in the most imposing form, this connecting company as the builder of this line of road ; and after carrying into effect such a project, and taking into its possession the track thus acquired, it is quite too late for the Midland railroad to attempt to repudiate a contract honestly entered into with the connecting railroad, in the orderly prosecution of such project.

And in such a respect as this it is an error to assume this respondent, as the mortgagee of the Midland, stands in a better position than his mortgagor. The fallacy of such a position arises from overlooking the circumstance that this mortgage, so far as we are now concerned, relates to a railroad track to be acquired and constructed after its execution. This particular road was not in contemplation, even, when this mortgage was given, and it is obvious that it must pass to the mortgagee with the burthens incident to its acquisition. All the property and rights acquired by the mortgagor enure to the benefit of the mortgagee; but nothing can be claimed by the latter beyond this.

The right to cross the Morris and Essex was a beneficial interest added to the value of the mortgaged premises ; the equivalent for such right was the privilege of crossing such newly-built track by the former company. Such privileges and encumbrances were the usual and all but necessary arrangements incident to the laying of a railroad route, and they inseparably annex them-

selves, partly as an advantage and partly as a disadvantage, to the property in the railroad, and in that way inevitably qualify the interest that comes to a prior mortgagee in such premises. The contract in question cannot be repudiated by this trustee— the property came to him *cum onere.*

Having thus concluded that this agreement is legally efficacious to hold all parties in interest to its terms, the next inquiry is as to its meaning and legal effect.

As I have said, this contract first gives to the Hudson Connecting Company the right to cross the track of the Morris and Essex at a certain point; it then stipulates in these words:

"*Third.* That if at any time hereafter the said parties of the first part [The Morris and Essex and the Delaware and Lackawanna] or either of them, shall desire to change the line and grade of the main line of the Morris and Essex railroad, or of the Boonton branch railroad, or both of them, as to make it necessary to cross the said railway of the said party of the second part, which, under this agreement, is to be constructed over the Morris and Essex railroad, or the railway which, under the said agreement of April 3d, 1872, had been constructed by the said party of the second part over the said Morris and Essex railroad, or over both of said railways, they, the said parties of the first part, or either of them, shall have the right, without charge, to cross either or both of said railways of the said party of the second part, over, under or at grade, and the said parties of the first part, or either of them, may occupy and use without charge so much of the lands of the said party of the second part as may be necessary for that purpose."

By force of these stipulations, the Delaware, Lackawanna and Western Railroad Company claims the right to cross the track in question at a point where it runs through a piece of land about eighteen hundred feet long, used for terminal purposes and as a drill-yard. The question is, whether such a right has been conferred upon this company by virtue of this contract, the substance of which has been above quoted.

In my opinion, such a claim is a most extravagant one. I find such a signification neither within the literal terms of the agreement, nor sustained by any reasonable supposition as to the intention of the parties. The contract, in words, gives the right "without charge, to cross either or both of said railways, and to occupy and use, without charge, so much of the lands of the

Coe *v.* Del., Lack. and West. R. R. Co.

said party of the second part as may be necessary for that purpose." The whole privilege here granted is the privilege to cross the track, and to occupy and use the land necessary for that purpose; but this right of passage does not embrace anything but the railroad track, and the land appertaining to such track. It would be altogether unreasonable to deduce from such terms as these, that it was the understanding of these parties that this railroad company should have the enormous privilege of ·crossing with its road not only the track of the other company, but also over all lands and structures used in connection with its road. Is it rational to assert that the Morris and Essex company, when it entered into this compact, understood that it was to become vested with the right to construct its road, without charge, through the workshops of the other contracting party, or through its depots, however costly? And yet, such must be the right if the construction contended for is to prevail—and surely a right so exorbitant and oppressive cannot be raised up out of doubtful terms. It may well be doubted whether a power so unnecessary, so destructive of all fairness and equality in the bargain, could be enforced, except by the use of terms so clear and specific as to leave no room for speculation as to what was meant on the one side and on the other. The conventional privilege to cross the track of this company does not comprehend and carry with it the right to cross, without charge, its drilling-yard. So far, therefore, as the mere crossings of this main track at the points in question are concerned, the Delaware and Lackawanna Railroad Company is entitled to do such act without ·charge; but so far as it crosses lands used for other purposes than that of its main railroad track, it must make a reasonable ·compensation, to be ascertained in the usual manner. The result therefore is, that, in this respect, the decree should be reversed, and the contract in question, construed in the sense above indicated, should be decreed to stand confirmed in all respects, and to be specifically performed.

Neither party should be allowed costs in either court.